JAMES R. McCLELLAN AND SARAH McCLELLAN, PLAINTIFFS, v. F. A. NORTH COMPANY, A NEW JERSEY CORPORATION, AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND, A CORPORATION, DEFENDANTS

Decided October 2, 1936.

For the plaintiffs, *William Charlton.*

For the defendants, *Waddington & Mathews.*

JAYNE, C. C. J. The controversial issues of law and fact in this action have been submitted by stipulation of counsel to the court for determination without a jury. It transpires, however, that the basic facts essential to the consideration of the case are not in a state of dispute or uncertainty.

The initial transaction between these parties, which apparently occurred on November 1st, 1927, is evidenced by an agreement in writing. This agreement, if accepted literally, reveals that the F. A. North Company "leases and hires" a certain piano to James McClellan and Sarah McClellan for the term of thirty-three months for the aggregate rent of $2,187. The agreement contains an acknowledgment of the receipt of $437 and it is conceded that the additional sum of $100 was paid upon the delivery of the piano. These are the only payments made by the so-called lessees to the North Company. The agreement embodies a promise by the lessees to pay to the company, as rent, the sum of $50 on December 8th, 1927, and a like sum on the eighth day of each succeeding month during the term of the lease. Confessedly, none of the monthly payments was made. It is observed that the agreement by its terms likewise accords to the company the right to repossess the piano if default in the payment of any monthly rent should eventuate. The lessees, so styled, being delinquent, the company on April 2d, 1928, caused a writ of replevin to be issued and executed by virtue of which the company obtained possession of the piano. Before deliverance of the piano by the sheriff to the company, the familiar bond, executed by the company and by the Fidelity and Deposit Company of Maryland as surety, was presented to the sheriff. This action in replevin, after seven uneventful years of its existence, was brought to trial at the Mercer Circuit on April 30th, 1935. At the trial a verdict was directed in favor of the defendants solely on the ground that the action had been instituted before any demand was made for the return of the piano. The action of the trial judge was reviewed and the judgment affirmed by the Court of Errors and Appeals. *F. A. North Co.* v. *McClellan,* 116 *N. J. L.* 145; 182 *Atl. Rep.* 875. The rule for judgment

awarded the return of the piano to the McClellans, who were the defendants in the replevin suit. After the affirmance of the judgment, the defendants in the replevin action caused a writ *de retorno habendo* to be issued. The sheriff to whom this writ was directed made return that the chattel had been eloigned. On May 22d, 1935, the replevin bond was assigned by the sheriff to the present plaintiffs who were the defendants in the replevin action. Additionally it has been stipulated that the value of the piano at the time it was replevied was $2,187. The F. A. North Company was the owner of the piano. The taxed costs in the replevin action are $51.50. The foregoing is a statement of the facts adequately established in the present action. The plaintiffs here allege a breach of the condition of the replevin bond. This allegation is fully sustained by the proof. The obligation of the F. A. North Company under the bond was to "duly return the said goods and chattels in case a return shall be awarded." The return of the piano was awarded and the piano was not returned.

The proof of damages may now be examined. The only proof relating to damages submitted by the plaintiffs is that concerning the taxed costs allowed them in the replevin suit and the value of the piano. The plaintiffs in their complaint seek to recover the value of the piano and the taxed costs of the replevin suit as the consequent damage suffered by them as a result of the breach of the bond. In the brief submitted in behalf of the plaintiffs there is a persistent adherence to such a claim. In the existing state of the proofs, the demand for such damages would seem to be conspicuously exorbitant. At the time the piano was taken from the plaintiffs, they were not the owners of it and they were admittedly in default in the fulfillment of their contractual obligations. They had agreed that upon the occurrence of such delinquency on their part, the F. A. North Company might repossess the piano. Their possession of the piano at that time was apparently a matter of favor rather than a matter of contractual right. The aggregate sum of all the payments made by them to the company was $537. The piano was worth $2,187. Notwith-

standing these evident circumstances, it is now contended that the initial situation of the parties has undergone a complete transformation in its legal character and that the plaintiffs are now entitled to recover the value of the chattel itself as damages. This anomalous outcome is said to be the inevitable effect of the judgment in the replevin action. The unfair insistence of the plaintiffs in the present case resembles the unrighteous contention of the plaintiff in *Sloan* v. *Poor,* 7 *N. J. Mis. R.* 197 ; 145 *Atl. Rep.* 469.

An examination of the pleadings filed in the replevin action discloses that the title to the piano was not in issue. Indeed, the absolute ownership of the F. A. North Company was admitted. An action of replevin is primarily possessory in its character and a judgment in such action ordinarily determines nothing beyond the right to the possession of the goods and chattels. The title to personal property may be in one and the right to possession in another. Then moreover, to maintain an action in replevin, the plaintiff must prove his right to the possession of the property at the time of issuing the writ. It may be determined that the plaintiff ought to have made a demand upon the defendant for a return of the property before suing out the writ of replevin and for this reason judgment may be rendered for the defendant. Therefore it is not to be conclusively assumed that a judgment for a defendant in replevin constitutes a judicial determination of the title to the property. The judgment in the replevin suit between these parties was not determinative of more than the right of possession of the chattel.

The argument in behalf of the plaintiffs seems to be that while it might have been competent to inquire into the title of the chattel and into the state of facts then existing in opposition to an order or an award for the return of the chattel in the replevin action, yet the return of the piano having been awarded, the company and its surety are now precluded from availing themselves of such evidence in this action and that the award plus the failure to return the chattel make the defendants liable for the full value of the piano. True, the judgment awarding a return of the property to the

defendants in the replevin suit is conclusive upon the parties. The failure to make return when so awarded constitutes a breach of the bond. The next question, however, relates to damages occasioned by the failure to return the property. This latter question obviously was not adjudicated or in issue in the replevin suit. Therefore the question of damages, so far as it has not been settled by any judgment, is clearly open to litigation in the present action.

In an action for breach of the replevin bond, involving also the liability of the surety, the defendants are permitted to introduce any relevant and competent evidence in mitigation of damages, provided such evidence does not constitute a collateral attack upon the judgment rendered in the replevin suit. The authorities uniformly affirm the right of a defendant in any such action to prove that the actual damage sustained by the plaintiff is less than the value of the property replevied as well as other facts properly to be considered in mitigation of the damages. The logical reasons for this rule may be found expressed in the following reported cases: *Davis* v. *Harding* (*Mass.*), 3 *Allen* 302; *Jones* v. *Smith* (*Me.*), 10 *Atl. Rep.* 256; *Jackson* v. *Emmons* (*Conn.*), 22 *Id.* 296; *Fielding* v. *Silverstein* (*Conn.*), 40 *Id.* 454; *Hannon* v. *O'Dell* (*Conn.*), 43 *Id.* 147; *Harmon* v. *Flood* (*Me.*), 97 *Id.* 834; *Macomber* v. *Moor* (*Me.*), 148 *Id.* 682; *Budracco* v. *National Surety Co.*, 182 *N. Y. S.* 590; *Ringgenberg* v. *Hartman* (*Ind.*), 24 *N. E. Rep.* 987; *Consolidated Tank-Line Co.* v. *Bronson* (*Ind.*), 28 *Id.* 155; 54 *C. J.* 671, footnote. Apparently in some states the admission of such evidence is authorized by statute. *Magerstadt* v. *Harder* (*Ill.*), 65 *N. E. Rep.* 225; *Bates* v. *American Surety Company of New York* (*R. I.*), 148 *Atl. Rep.* 323.

In the instant case, the proof discloses (original file in replevin suit) that the title to the piano was not judicially determined; that at the time the piano was replevied, it was owned by the F. A. North Company, the defendant here; that under the terms of the agreement of November 1st, 1927, the company was entitled to lawfully retake the piano by reason of the existing default of the lessees. The lessees had

so agreed. The agreement expressive of the rights of the parties with reference to the possession of the piano is in evidence. Justice requires that these facts be noticed in undertaking to determine the just damages to which the plaintiffs are entitled in the present action. These facts are clearly sufficient to indicate that the plaintiffs are not entitled to recover the value of the piano. The plaintiffs must prove their actual damage. If they have not in fact been damnified, they can recover only nominal damages. The bond is one of indemnity. If in the light of all the facts and in recognition of the judgment in the replevin suit, it is to be understood that the plaintiffs had some special, qualified or limited interest in the piano, such an interest was certainly no greater than a mere possessory right extinguishable at any time upon a proper demand by the company for the return of the property. In a suit upon a replevin bond for damages the fact that the plaintiff had only some special or qualified interest in the chattel has material significance. 54 *C. J.* 649; 23 *R. C. L.* 916; *Sloan* v. *Poor, supra.* In the present case we have only proof of the value of the piano. Knowledge of the value of a chattel may sometimes aid in determining the value of its use. The limited proof here submitted considered in the light of other existing facts and circumstances does not afford a reliable basis for any reasonable monetary estimation of the loss suffered by the plaintiffs in consequence of the failure of the company to return the piano. In the absence of proof it cannot be said that the deprivation of such an uncertain possessory right requires an award of more than nominal damages.

The plaintiffs are entitled to recover the costs taxed in their favor in the original action in replevin. 3 *Comp. Stat., p.* 4375; *Peacock* v. *Haney,* 37 *N. J. L.* 179.

Consideration may now be given to the counter-claim. Concisely stated, the defendant F. A. North Company by way of counter-claim seeks to recover from the plaintiffs all of the monthly payments required to be made by the plaintiffs under the terms of the agreement of November 1st, 1927. It is noted that the agreement does not state that the title to the

piano is to pass to the plaintiffs at a subsequent time upon the payment of part or all of the specified rental or upon the performance of any other condition or the happening of any contingency nor does the agreement provide that the plaintiffs, as lessees, are bound to become, or have the option of becoming, the owners of the piano upon full compliance with the terms of the agreement. See *Pamph. L.* 1919, *ch.* 210, *p.* 461, § 1; *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 3129, § 182-87. Moreover, in this agreement the plaintiffs expressly agreed to return the piano to the so-styled lessor at the end of the term of thirty-three months. The question whether this document entitled "lease" is in truth expressive of a conditional sale or a bailment of the piano has received treatment in the briefs of counsel. *Singer Manufacturing Co.* v. *Wolff & Co.,* 70 *N. J. L.* 127; 56 *Atl. Rep.* 147; *Rapoport* v. *Rapoport Express Co.,* 90 *N. J. Eq.* 519; 107 *Atl. Rep.* 822; *Wood* v. *Cox,* 92 *N. J. Eq.* 307; 113 *Atl. Rep.* 501.

The fact, however, is evident that the defendant company by virtue of the writ of replevin took the piano from the plaintiffs on April 3d, 1928. If the transaction is regarded as a bailment, that is, one of hire, the proof reveals that the bailor resumed possession of the piano for the expiration of the specified period during which the plaintiffs, as bailees, were to have the use of the chattel and in such event and in the absence of some express stipulations to the contrary, the plaintiffs, as bailees, would be liable only *pro tanto* for the payment of the hire. If the transaction was in reality an intended conditional sale of the piano, then it appears that the piano was retaken by the conditional vendor, was not resold and the counter-claim is for the balance of the purchase price. In such a situation the buyers are discharged of liability for the unpaid balance of the purchase price. 2 *Cum. Supp. Comp. Stat., p.* 3129, § 23. In either situation it is manifest that the defendant company is not entitled to recover the aggregate of all the monthly payments amounting to $1,650. The following term of the agreement is significant: "It is hereby expressly agreed that if the said lessor shall retake possession of said pianoforte * * * upon default

during said term in the payment of the rentals hereby reserved, such retaking by said lessor shall not be taken or construed as in any manner releasing or discharging said lessee from liability for any *rental unpaid at the time of such retaking.*" (Italics mine.) This term of the agreement would seem to exhibit the intent of the parties in the eventuality mentioned. At the time the piano was taken by the company there were four payments of $50 each then due and owing. The problem survives for solution whether the defendant company is entitled to now recover under its counterclaim the installment payments which fell due on the 8th days of December, 1927, January, February and March in the year 1928.

In the answer to the counter-claim the plaintiffs aver that the transaction relating to the piano is a conditional sale and additionally they plead the statute of limitations. *Berry* v. *Doremus,* 30 *N. J. L.* 399; *Masonic Temple Association* v. *Kistner,* 11 *N. J. Mis. R.* 761; 168 *Atl. Rep.* 43.

The legal nature and character of this agreement as well as the intent of the parties must necessarily be harvested from the agreement itself. The agreement is unlike most of those now commonly encountered in that it contains no provision whatever for any future transmission of the title and does not accord to the so-called lessees any option to acquire the title. To the contrary the lessees are obligated to return the piano to the lessor at the expiration of the stated term. It has been held that an instrument in the form of a lease transferring the possession of personal property for a fixed term in consideration of the payment of a reserved rent with provision for the return of the chattel at the end of the term or sooner, in the event of default, and containing no provision for the future transmission of the title or any option or obligation relating thereto, is not a contract of conditional sale. *Singer Manufacturing Co.* v. *Wolff & Co., supra.* The conclusion expressed in the Wolff case has not been overruled but its recognition as an authority has subsequently been restricted to cases in which the facts are identical. *Rapoport* v. *Rapoport Express Co., supra; Wood* v. *Cox, supra.* The

action on the counter-claim is between the parties to the agreement. The written paper constitutes the only evidence of the agreement between the parties. The agreement requires that the chattel be returned at the expiration of the stated period. There is no competent evidence of any contrary intention. The intent of the parties cannot be founded upon surmise or conjecture. The facts in the present case would therefore seem to be identical with those present in the Wolff case. It is said that the rental of $2,187 is equivalent to the value of the piano but precisely the same circumstance existed in the Wolff case. In the present case the transaction between the parties will therefore be regarded as a bailment.

The causes of action for the recovery of the payments which became due in 1927 and 1928 preceding the retaking of the piano obviously accrued more than six years before the assertion of the counter-claim of the defendant company. In behalf of the plaintiffs the insistence is that the recovery of these payments is barred by the statute of limitations. 3 *Comp. Stat., p.* 3162, § 1.

In response, the defendant company avers that the alleged indebtedness arises by virtue of a contract under seal. Whether the contract is a specialty or a contract without seal is a question of law which is to be solely determined by an inspection of the document itself. It must, upon inspection, appear to be a sealed instrument or it cannot be recognized as such. *Corlies* v. *Van Note, Admr.,* 16 *N. J. L.* 324; *Coral Gables, Inc.,* v. *Kretschmer,* 116 *Id.* 580; 184 *Atl. Rep.* 825; 56 *C. J.* 898.

In the usual place of a seal the printed letters "L. S." enclosed in brackets appear on this agreement. The words of the testimonium clause are "Witness our hand and seal the date first hereinbefore written." Immediately to the left of the printed letters "L. S." and beneath the testimonium clause are the signatures of the two plaintiffs. It must be recognized that the practice of actually sealing legal documents by the impression of an individual mark or devise upon wax or wafer or even on the parchment or paper itself, has been largely abandoned in recent years. The use of wafers

succeeded the earlier use of wax until in the modern times sealing of instruments has become more constructive than actual in character. Our statute declares that all instruments executed with a scroll, or other device by way of a scroll, shall be deemed sealed instruments. 2 *Comp. Stat., p.* 2240, § 66, 1.

Chief Justice Hornblower, in *Corlies* v. *Van Note, Admr., supra,* stated: "When therefore, a writing with nothing but a blot, or scroll, or flourish after the name, is shewn in court, we are bound to consider and treat it, as a simple contract only, unless it appears by the writing itself or by the *hiis testibus* clause, that the party making it, intended to do so under his hand and seal."

Mr. Justice Ford in a concurring opinion said: "The only way to 'affix a scroll, or ink, or other device, by way of seal' is by writing, 'witness my hand and seal,' or 'sealed and delivered,' or something to that effect in the instrument itself, which then becomes a deed in writing, instead of being by word of mouth. It then becomes on its face a deed, in writing, of which there can be a profert, and of which the court can form an opinion by inspection, according to the principles of law."

The letters "L. S." meaning originally *"locus sigilli"* have in recent times acquired the popular force of an arbitrary sign for a seal. The testimonium clause of the present agreement is evidence in at least a *prima facie* sense of the intention of the parties to seal the agreement. Although there is but one seal, the contract manifestly purports to be given under the hands and seals of the signers thereof. The testimonium clause indicates that all of the signers intended to seal it and in this situation it is to be presumed that each of the plaintiffs adopted the seal. *Ryan* v. *Cooke (Ill.)*, 50 *N. E. Rep.* 213, 214: *Cammack* v. *J. B. Slattery & Bro. (N. Y.)*, 148 *Id.* 781, 782; 56 *C. J.* 896.

It might be urged that the agreement by its terms was not to become binding and effective until its approval by the company at its office in the State of Pennsylvania and it might be therefore contended that in such circumstances the contract was made at the place of its ratification. *Northampton*

*Mutual Live Stock Insurance Co.* v. *William Tuttle,* 40 *N. J. L.* 476. It may be observed that at the top of the printed agreement are the printed words "New Jersey" and additionally the agreement embodies an express provision relative to its admission in evidence in the courts of the State of New Jersey. However, even to postulate that the agreement was made in the State of Pennsylvania does not introduce any critical issue in this case because proof of the law of Pennsylvania was submitted. It is the uncontradicted evidence that the agreement is a specialty under the law of that state. Such proof having been adduced the case of *Waln. v. Waln,* 53 *Pa.* 429; 22 *Atl. Rep.* 203, is not applicable.

It is next argued in behalf of the plaintiffs that there is no proof of the statute of limitations of the State of Pennsylvania. Such proof is irrelevant and immaterial. It is well settled that the statute of limitations merely affects the remedy and that in suits brought upon contracts such as that here involved, the period of limitation prescribed by the law of the forum controls. *Summerside Bank* v. *Ramsey,* 55 *N. J. L.* 383; 26 *Atl. Rep.* 837; *Jaqui* v. *Benjamin,* 80 *N. J. L.* 10; 77 *Atl. Rep.* 468. In the present case it is unnecessary to determine whether an action in this state for the recovery of an installment of rent reserved for the use of a chattel under a contract under seal is barred by our statute after a period of sixteen years has elapsed since the installment of rent became due and payable. The question here projected is whether such an action is barred by our statute after a period of six years has elapsed. The answer must be in the negative.

The consideration of all the controversial issues submitted by the parties for determination leads to these conclusions. The plaintiffs have proved a breach of the replevin bond. They are entitled to the taxed costs allowed them in the replevin suit amounting to $51.50 with interest thereon and in addition merely nominal damages. The actual damages of the plaintiffs are therefore assessed at $56. On the counterclaim the plaintiffs are indebted to the defendant F. A. North Company in the sum of $200 with $95.34 interest, amounting in all to $295.34.