56 N.J. Super. 449 (1959)
153 A.2d 731
DEPARTMENT OF MENTAL HEALTH OF THE COMMONWEALTH OF KENTUCKY AND VINCENT J. HARGADON, ADMINISTRATOR OF THE ESTATE OF CARRIE LEE MULLINS. ALSO KNOWN AS CARRAY LEE MULLINS AND CARRY LEE MULLINS, DECEASED, PLAINTIFFS-APPELLANTS,
v.
ROY L. MULLINS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1959.
Decided July 8, 1959.
*453 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Howard Stern argued the cause for plaintiffs-appellants (Messrs. Hofstra & Hofstra, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
In this matter defendant failed to file a brief but engaged a lawyer (not his trial counsel), who, without advance application or notice to the court of intention so to do, appeared at the argument and sought leave to present oral argument. In accordance with our settled practice in such cases, the request was denied. Defendant was represented by capable and reputable counsel in the Law Division. The appeal here is only by the plaintiffs, not the defendant.
Defendant had, prior to argument, filed with the clerk of this court a copy of a motion before the United States District Court for the District of New Jersey to enjoin the prosecution of the instant action. The clerk advised him, at the direction of the court, that if he desired to be heard on the motion or the appeal itself he might appear at the hearing of the appeal. He failed to do so. A request by his new counsel to stay the appeal pending the outcome of the motion in the federal court was denied as patently without merit.
We adopt the statement by the trial judge of his findings of fact, conceiving it to be supported by the record, and also his summary of the nature of the action. Plaintiffs concede that the fact findings in the statement are correct. It is as follows:
"This action seeks to recover from defendant charges for maintenance of his former wife during confinement in the Central State Hospital of the State of Kentucky from November 8, 1922 to June 24, *454 1949 and in the Kentucky State Hospital from the latter date to her death on October 4, 1955 (less two short periods of 2 1/2 months and 7 days during trial visit periods outside the hospitals), plus interest thereon at 6%. It is stipulated that if any liability exists, it is on the basis of the rates fixed by Kentucky for non-indigent patients in its mental hospitals pursuant to statute, viz., $90 per quarter up to June 30, 1948 and $150 per quarter from that date. Interest is claimed on each quarterly installment from the end of the quarter.
The case was tried without a jury. I find the following facts: Defendant married Carray Lee Mullins (also known as Carrie Lee) on August 22, 1917 at Clintwood, Virginia. They moved to Louisville, Kentucky and established residence there. Defendant attended school and in 1920 commenced the study of medicine at the University of Louisville. He pursued his medical studies to completion in 1924 and then left Kentucky, never to return. A son was born of the marriage in 1921.
In May or June, 1922, the wife showed signs of an abnormal mental condition. Some time thereafter she was a patient in a private sanitarium in Louisville, the cost of which was shared by defendant and her brother. In October 1922, a petition was filed in the Jefferson Circuit Court in Louisville seeking an inquest on the ground that she was a person of unsound mind. Following a jury verdict a judgment was entered October 16, 1922 that she was a person of unsound mind and a lunatic and that she be committed to the Central State Hospital. I am satisfied that the proceedings were regular and valid, in accordance with Kentucky practice at that time.
She entered the hospital on November 8, 1922 and remained there until her transfer on June 24, 1949 to Kentucky State Hospital where she continued as a patient until her death in 1955. The latter hospital, established about 1940, is, like Central State Hospital, one of the integral parts of a single entity, the State Department of Mental Health (created in 1952) and its predecessors, the Department of Welfare (created about 1930) and the State Board of Charities and Correction. Her 1949 transfer was proper and in accordance with due administrative procedure. It is admitted that she was insane at the time of admission and remained so to her death.
There was no direction in the judgment in the lunacy and commitment proceedings as to who should pay for her care and maintenance. The records of the hospitals show that she was classed as indigent.
Following the graduation from medical school in 1924, defendant, for the next three years, served an internship, did postgraduate work and was a resident physician in three different hospitals in Portsmouth, Virginia, New York City and Philadelphia. In the summer of 1927 he went to Reno, Nevada for the purpose of establishing residence to bring suit for divorce against his wife. The suit was filed November 1, 1927. The ground of divorce alleged, pursuant to *455 Nevada law, was the insanity of the wife. The complaint stated that the plaintiff therein had never been required by any order of any Kentucky court to pay any sum of money toward the maintenance and support of his wife since commitment, but had paid certain sums of his own free will, and went on to say that in event a decree was granted `said plaintiff is willing to contribute to the support and maintenance of said defendant in the amount and in whatever manner the court may order and direct, and said plaintiff is willing and does hereby offer to give bond therefor in whatever amount may be fixed by the court.' Central State Hospital knew of the action, for its superintendent gave a deposition to prove the insanity of the wife and the existence thereof since admission. A decree of divorce was entered on November 14, 1927, as to the validity of which no question is involved, granting an absolute divorce for insanity for a period of two years prior to the commencement of the action. There is written in at the end thereof, after the award to him of custody of the child of the marriage, the following language: `* * * and plaintiff shall pay all reasonable charges for the support of defendant, which may be required by the institution in which defendant is now confined.'
Defendant left Nevada within a week after the decree, having in the meantime written the hospital advising that he had obtained a divorce, but making no mention of the decree provision relative to support, and joined the United States Public Health Service as a physician, with which he was connected for about 18 months at a salary which placed him in a position to support his former wife. Following that period he came to New Jersey to practice medicine in East Orange in 1929, from which date he has been a resident of this state. He moved to Frenchtown in 1934 where he has practiced medicine since. He remarried after the commencement of his residence in New Jersey.
It is conceded that no demand was ever made upon him by the State of Kentucky or any agency of it for the support and maintenance of Carray Lee Mullins until after her death and that he (nor anyone else) ever paid anything thereon, except as hereafter noted. Demand was first made, for the entire period of confinement at the fixed rate plus interest, by letter on January 25, 1956. It should be noted, however, that by letter dated November 3, 1926, the superintendent of the hospital wrote to the State Commissioner of Public Institutions advising that the hospital had reason to believe that Mrs. Mullins should be a `pay patient' and suggested investigation. Nothing was done, as far as the evidence discloses.
While defendant was still in Louisville, he made periodic inquiry concerning his wife's condition and visited her on occasion. After he left the city and up to very shortly before the divorce decree, he wrote the hospital from time to time, inquiring as to her condition and advising of his address. He also forwarded small sums of money for incidental needs, clothing and a denture, either voluntarily or when asked by the hospital. These amounts ranged from $5 to *456 $20 or so and the total over the years probably did not exceed $100. After the divorce, the evidence shows only one letter, that in December, 1928, inquiring as to her condition, and no remittances by defendant or requests by the hospital. It is clear that up to that time the hospital always knew where defendant could be located and that thereafter there were means available through which he could be found.
The complaint, filed September 17, 1956, is in three counts. The first is by the Department of Mental Health. It seeks recovery at the quarterly rate plus interest at 6% for the full period of confinement in the sum of $26,063.00 on the basis of the statutory obligation of a husband to pay the board and maintenance of an incompetent wife confined in the mental institutions of Kentucky, claimed to survive the Nevada decree. The second count is brought in the alternative by the Administrator of the Estate of Carray Lee Mullins, appointed in Kentucky at the instigation of the department as a creditor, and alleges that she had, at the time of her death, a claim against defendant in the same amount for her support and maintenance, for the full period of confinement (on the same general theory as the basis of his liability) and that the estate is indebted to the department for such support and maintenance. It is admitted that the estate has no other assets and that the administration was taken out to attempt to avoid any bar of the statute of limitations that might be applicable as to the first count. The third count is brought jointly by the department and the administrator directly on the Nevada divorce decree, i.e., the provision therein relating to payment of charges for support, and seeks recovery at the quarterly rate plus interest from the date of the decree to the date of death, amounting to $20,880.12.
Defendant contends that his statutory liability for support as a husband from 1922 to the date of the divorce is barred by the appropriate statute of limitations and any liability thereafter must be predicated on the specific language of the decree; that any liability thereunder from the date of the decree to the transfer to Kentucky State Hospital in 1949 is likewise barred by the statute, and that there can be no obligation imposed for maintenance in the latter hospital because the Nevada decree limited support to such as may be required `by the institution in which the defendant is now confined,' i.e., Central State Hospital."

I.
As to Kentucky's claim, the trial court held, first, that the obligation for hospital charges from the date of admission until the date of the divorce decree was barred by our statute of limitations, N.J.S. 2A:14-1, apparently having reference to the provision therein for a six-year *457 period as to contractual claims or liabilities. The Commonwealth does not contend that any other provision of the statute applies, if, as the trial court held, the law of the forum controls in matters of limitations. Plaintiff concedes this is the general rule. McClellan v. F.A. North Co., 14 N.J. Misc. 760 (Sup. Ct. 1936); Restatement, Conflict of Laws (1934), § 585, p. 702. But it seeks to avoid the bar of the statute in respect to the charges antedating the divorce decree by arguing that the law of the situs, Kentucky, should be applied in tolling the period of limitations during defendant's absence from that state, citing Albanese v. Ohio River-Frankfort Cooperage Corporation, 125 F. Supp. 333 (D.C. Ky. 1954). That case illustrates Kentucky's unique conflict of laws rule to the effect that if the law of the situs allows a longer period of limitations than that of the forum the law of the situs will be given effect. In most other jurisdictions the conflicts rule applied is that the limitations period of the forum controls, unless by the law of the state which has created a right of action it is made a condition of the right that it shall expire after a certain period of time, in which case the forum will not entertain an action begun after the period has elapsed. Restatement, Conflict of Laws (1934), §§ 603, 604, 605, pp. 720-722; Abbott v. Vico, 24 N.J. Super. 10, 17 (App. Div. 1952); Gordon v. Loew's, Inc., 247 F.2d 451 (3 Cir. 1957); United States v. Jacobs, 155 F. Supp. 182 (D.C.N.J. 1957). In purported explanation of the applicability in this case of the proposed rule plaintiff cites a general Kentucky limitations statute fixing a five-year period of limitations for an action of this type, KRS 413.120, and another section of the same statute tolling the period in the case of a cause of action against a resident of the state during any period of time in which he absents himself from the state. It is argued: (a) the tolling provision applies here, defendant having left Kentucky in 1924 and never returned; (b) the provision as to tolling the statute is engrafted on the right of action; and (c) New Jersey *458 should apply the rule of the situs in the foregoing respects in comity with Kentucky's practice of doing the same in the converse situation.
Several good reasons for rejection of the argument come to mind at once. (1) Comity is not here applicable at all. No proper reason is shown for not applying our own ordinary choice-of-law rule. (2) The tolling-period section of the Kentucky statute is not a part of nor directed specifically to any statutory cause of action for the hospital charges. It merely applies as a general qualification of the limitations rule in a whole category of kinds of action. KRS 413.190(1). (3) Even where the qualification of the general rule is applicable it is only properly invocable to cut down, not enlarge the period of limitations. Restatement, Conflict of Laws (1934), § 605. The holding for enlarging the period in Northern Pac. Ry. Co. v. Crowell, 245 F. 668 (D.C.N.J. 1917), cited by plaintiff, is unorthodox, and we see no reason for following it in preference to the rule approved in the Restatement. (4) The principle of tolling the statute during the absence from the state of a resident defendant has no rational application where the action is being prosecuted in a foreign jurisdiction rather than in the state of assumed residence. Defendant had, prior to the inception of this action, been a resident of New Jersey for longer than the six-year period of limitations, which, as indicated hereinafter, we have decided controls this case. The New Jersey statute for tolling limitations during the absence from the state of a defendant, N.J.S. 2A:14-22, would be the only one properly applicable were there an absence-of-party problem here. Therefore, and by reason of the defendant's residence here during the period mentioned, the incidence of residence in or absence from Kentucky by defendant does not bear on the determination of limitations as to the charges for the period antecedent to the Nevada decree. We conclude that those were correctly held barred in entirety by the trial court.

*459 II.
With respect to Kentucky's claim for the charges which accrued subsequent to the entry of the Nevada divorce decree the trial court concluded that the theory of the complaint as founding the claim directly on that decree (third count of the complaint) was "probably sounder" than conceiving the claim as being based on the status of a creditor supplying necessaries for the support of a wife for which the defendant husband was liable, under both Kentucky and Nevada statutes, without regard to the fact of the intervening divorce for insanity of the wife (first count of the complaint). The court concluded that, viewing the action as one based upon a foreign judgment, the provisions of N.J.S. 2A:14-5, adopted in 1952, establishing for the first time in this State a statutory provision for limitations in actions upon foreign judgments, created a six-year period of limitations. We think this result was correct, so far as it goes, if the action is viewed as one upon a foreign judgment, although not necessarily upon the basis of the reasoning of the trial court. (In this connection it may be noted that the Nevada period of limitations in actions on judgments is six years, apparently as to domestic and foreign judgments both. 1 Nev. Rev. Stats. (1957), § 11.190.) In this view of the new provision for a period of limitations for actions upon foreign judgments, however, we are constrained to agree with the plaintiff's position, rejected by the trial court, that the statute, so construed, would have the invalid effect of destroying the vested right of the plaintiff, as of the effective date of N.J.S. 2A:14-5, January 1, 1952, to bring its action upon the Nevada judgment free of limitations retrospectively applied. There was no previous express limitation period for actions on such judgments in this State, Ehnes v. Weldon, 13 N.J. Super. 23 (App. Div. 1951), certification denied 7 N.J. 577 (1951) (but note Summerside Bank v. Ramsey, 55 N.J.L. 383 (Sup. Ct. 1893), holding for six-year limitations in action on judgment *460 of foreign country), and plaintiff's pre-existing right of action could not validly be cut off, in whole or in part, by any retrospectively applied new limitations enactment, unless the act provided for a reasonable time period within which, if action were then instituted, the entire previously vested claim could be sued upon free of the effect of the new limitations provision. Johnson v. Asbury Park Press, 14 N.J. Misc. 282 (Sup. Ct. 1936), affirmed 117 N.J.L. 533 (E. & A. 1937); and see Warshung v. Hunt, 47 N.J.L. 256 (Sup. Ct. 1885), affirmed 48 N.J.L. 613 (E. & A. 1886). Since no saving time period was provided for in N.J.S. 2A:14-5, as enacted in 1952, it could not validly apply to any right of action of plaintiff previously existing based upon a foreign judgment. We have concluded, however, that the six-year period of limitations is nevertheless applicable here, as we are of the opinion that the Commonwealth of Kentucky is not a judgment creditor under the Nevada divorce decree and that its claim is not to be categorized as being one upon a foreign judgment.
Although the defendant did not, so far as we are aware, make the point just mentioned before the trial court, we alerted plaintiff to the question at oral argument and gave it an opportunity to file a brief on the subject, which it did. We consider that we ought to take notice of the point in order to prevent, if the point has merit, an avoidance of the effect of an appropriate statute of limitations, with particularly unjust effect in the background of this case. Neither the Commonwealth of Kentucky nor any of its agencies was a party to the Nevada divorce action. In principle, the incorporation in the decree of the provision that "plaintiff shall pay all reasonable charges for the support of defendant, which may be required by the institution in which defendant is now confined" was for the benefit of the defendant wife in that proceeding, just as would be a provision in a divorce judgment providing for payment by a husband of the wife's future medical bills, etc. In the case of such a provision, no one would contend that a suit by a physician against the *461 husband to recover for medical services rendered the wife constituted an action on the judgment rather than one by a contract creditor for necessaries supplied the wife. The provision in question before us was couched as it was because, under the circumstances, it was the appropriate and practical way to articulate the husband's continuing obligation to his wife to maintain her, notwithstanding the divorce, and not for the purpose of investing the Kentucky hospital authorities, who were not parties to the proceedings in any sense, with the status of a judgment obligor of the husband. While no Nevada case is cited or found, in point, we have no doubt that the courts of that state would concur in our conclusion as a matter of principle. The general rule here applicable is that an action on a judgment can be prosecuted only by the owner of it, whose title to it must appear of record or by formal transfer, and the suit cannot be maintained by a third person not so qualifying "although the judgment may in some way define his rights or inure to his benefit or protection." 50 C.J.S. Judgments § 857, p. 431; see Hunt v. Monroe, 32 Utah 428, 91 P. 269, 270-271, 11 L.R.A., N.S., 249 (Sup. Ct. 1907); cf. State of Tennessee v. Barton, 210 Ark. 816, 198 S.W.2d 512 (Sup. Ct. 1946). We consequently conclude that the Kentucky authorities are not to be regarded as prosecuting the present action in this State as upon a foreign judgment, insofar as such a concept would bear upon the applicability of the New Jersey statute of limitations for actions on foreign judgments.
The conclusion just stated does not mean, however, that the Nevada decree is not relevant upon the question of defendant's substantive liability for the hospital charges. By the acceptance of that decree and its benefits he recognized his continuing liability to his wife for her support, although about to be divorced from her. See State of Tennessee v. Barton, supra (198 S.W.2d at page 515). Under the Nevada divorce statute a divorce on grounds of insanity does not relieve the successful party from contributing to the support and maintenance of the defendant. Nev. Comp. *462 Laws of 1929, § 9460; Herzog v. Herzog, 69 Nev. 286, 249 P.2d 533 (Sup. Ct. 1952). At the time when defendant arranged for his wife's adjudication as incompetent and her consequent commitment to a state hospital in Kentucky in 1922, it was, and ever since has been the statutory law of that state that a husband able to pay therefor should be liable for his wife's care at such a hospital. See the current statute, KRS, § 203.080. Moreover, defendant continued liable under his common-law obligation to support his wife, notwithstanding her insanity, in respect to which a third person supplying her with necessaries could recover therefor against him. Central State Hospital v. Foley, 171 Ky. 616, 188 S.W. 752 (Ct. App. 1916). In the case cited this rule was specifically held applicable in favor of a state hospital in which the defendant's insane wife was confined with his knowledge and without his objection until her death.
We consequently conclude that the correct conception of Kentucky's claim here is that of a creditor which has supplied necessaries to the defendant's wife, for which he remained responsible as a matter both of common and Kentucky statute law, as well as by implication from the Nevada divorce decree and statute. The applicable statute of limitations is that governing claims contractual in nature, which is six years. N.J.S. 2A:14-1. We thus concur in the determination of the trial court limiting recovery herein, insofar as the Kentucky authorities are concerned, to the charges which accrued commencing six years prior to the institution of the action until the death of the patient on October 4, 1955.

III.
Regarding the claim of the administrator of the estate of the decedent wife the trial judge held as follows:
"I fail to see any sound basis for any cause of action in the administrator. Mrs. Mullins at no time sought support here. The necessaries were furnished by a third party, i.e., the state, and in such a case the right to sue for the amounts expended rests in the party furnishing the same and not in her or her estate. The *463 alleged claim is bottomed on an artificially contrived situation without substance."
We agree with the disposition of that claim by the court.

IV.
As to the demand of the Kentucky authorities for the allowance of interest on their claim, the trial court held adversely, except for the period from the demand upon the defendant, applying the New Jersey rule precluding interest where considerations of equity and justice in the particular case indicated otherwise. Jardine Estates, Inc. v. Donna Brook Corp., 42 N.J. Super. 332, 340 (App. Div. 1956).
Interest is in contemplation of law damages for the illegal detention of a legitimate claim or indebtedness. Fidelity Mut. Life Ins. Co. v. Wilkes-Barre, etc., Co., 98 N.J.L. 507 (E. & A. 1923). The measure of damages for a breach of contract is determined by the law of the place of performance. Restatement, Conflict of Laws (1934), § 413, p. 494; 2 Beale, Conflict of Laws (1935), § 413.1, p. 1333. Where interest is a part of the measure of damages it is governed as to rate by the law of the place of wrong. Ibid., § 418.1, p. 1335. In the case before us Kentucky is the place of performance and of the wrong, payment of the charges having been due in that state. It follows that the incidence of interest in this matter should be adjudicated on the basis of Kentucky law rather than that of New Jersey.
The Kentucky rule is that interest runs as a matter of right on a liquidated demand. Only in the case of an unliquidated claim does it rest in the discretion of the jury or the court trying the case. Middleton v. Middleton, 287 Ky. 1, 152 S.W.2d 266, 268 (Ct. App. 1941). The charges sued for here are liquidated, the amounts due being fixed. Consequently application of the Kentucky rule requires that interest be allowed at the Kentucky rate of six per cent (KRS 360.010) on so much of the amounts sued for as *464 escape the bar of the statute of limitations. Interest at six per cent will therefore be allowed on the amounts recoverable calculated from the respective due dates of each quarterly installment.
As modified in respect to interest, the judgment is affirmed. No costs.