[Nos. 29423, 29424.   Department One.   November 27, 1944.]

JOHN P. LYCETTE, *Respondent,* v. GREEN RIVER GORGE, INC., *et al., Appellants.*

W. J. TRETHEWEY *et al., Appellants,* v. GREEN RIVER GORGE, INC., *et al., Respondents.*[1]

*Vanderveer, Bassett & Geisness,* for appellants.

*Lycette, Diamond & Sylvester,* for respondents.

MILLARD, J.—Green River Gorge, Inc., is a domestic corporation which owned and operated a pleasure resort in

[1]Reported in 153 P. (2d) 873.

King county. W. J. Trethewey and wife, who operated the corporation's resort for seventeen years, owned twenty-five per cent of the capital stock of the corporation. Elmer B. Campbell and wife owned seventy-five per cent of the capital stock of the corporation. John P. Lycette, who owned none of the stock of the corporation, was attorney for, and also a director and secretary of, the corporation. Mr. Campbell was president, Mrs. Campbell was vice-president, Mrs. Trethewey was treasurer of the corporation. The three directors of the corporation were Mr. Campbell, Mrs. Trethewey, and Mr. Lycette.

March 31, 1942, the Tretheweys commenced an action against the corporation to recover back salary in a considerable amount for their services as managers of the resort property. While the action was pending, Mr. Campbell and Mr. Lycette met in the office of the latter, and, as president and secretary of the corporation, these two executed a note in favor of Mr. Lycette in the amount of $1,250 to cover his services as attorney in defending the action brought by the Tretheweys. At the same time, they executed a mortgage to secure payment of the note and granted to the Campbells, in consideration of their advancing money to pay court costs in the action, an easement for a pipe line over the corporation's property, and the right to use water from the corporation's reservoir. The real estate subject to the mortgage constitutes substantially all of the property owned by the corporation.

At the meeting to consider the matter of defending the corporation against the action instituted by the Tretheweys, only two directors were present: Mr. Campbell and Mr. Lycette. Mrs. Campbell, a stockholder, was present, but Mrs. Trethewey, one of the three directors and a stockholder of the corporation, and her husband, who was a stockholder of the corporation, were absent. No formal meeting was held to decide the action the corporation should take, no written minutes were kept, and no notice was given to the Tretheweys of the meeting at which the mortgage to Mr. Lycette was executed in order to obtain his services as attorney to represent the corporation. Mr. Lycette testified

that no notice was given to the Tretheweys because their position was antagonistic to the interests of the corporation and for the additional reason that, if they had been notified, they would have attached the property of the corporation.

The Tretheweys were successful in their action to collect unpaid salaries. *Trethewey v. Green River Gorge, Inc.,* 17 Wn. (2d) 697, 136 P. (2d) 999.

An action was instituted in 1944 by Mr. Lycette against the corporation and the Tretheweys to foreclose the mortgage which had been executed to secure payment of the note, representing his fee for services in defending the corporation in the above-entitled suit. Answering, the Tretheweys pleaded that they were minority stockholders and that there was another action pending in which they sought to set aside and cancel the note given by the corporation to Mr. Lycette, and also to cancel the mortgage which Mr. Lycette sought to foreclose, upon the ground that same were not authorized by the corporation, and that the persons executing the instruments were disqualified by reason of personal interest from performing such acts for and on behalf of the corporation. In this action, the court entered a decree in favor of the plaintiff.

The second action, which was consolidated with the first, was brought by the Tretheweys against the corporation, the Campbells, and Mr. Lycette to set aside the mortgage and easement. Plaintiffs alleged that they were minority stockholders, that they secured a judgment in the amount of $10,373.52 against the corporation for unpaid salary, and that without notice to plaintiffs the note, mortgage, and easement described above were executed without authority. Judgment was entered dismissing the action. The Tretheweys appealed from the decree and the judgment.

■ The first question presented is whether respondent corporation is liable to counsel for services rendered in the former action (*Trethewey v. Green River Gorge, Inc., supra*). The fact that the Campbells, who owned seventy-five per cent of the capital stock of the corporation, insisted on employment of counsel and resistance of action against the corporation by the Tretheweys, who owned twenty-five

per cent of the capital stock of the corporation, did not transmute the action from one against the corporation to an action against the Campbells.

The president (E. B. Campbell) of respondent corporation retained counsel (Mr. Lycette) to defend an action brought by two creditors (Tretheweys), who were also minority stockholders of the corporation, to recover back salary for an amount in excess of all of the assets of the corporation. The president was the managing officer of the corporation and as such had authority to employ counsel without any express delegation of power to do so. *McKevitt v. Golden Age Breweries*, 14 Wn. (2d) 50, 126 P. (2d) 1077. Having accepted the services rendered by counsel retained by its president, the corporation is obligated to pay the reasonable value of such services.

It does not follow, however, that, whether they acted in good or bad faith in so doing, two of the corporation's three directors, Mr. Campbell and Mr. Lycette, were authorized to encumber or dispose of all of the corporate property to secure payment of Mr. Lycette's fee. Whatever the motives of the two directors, the mortgaging of all of the corporation's property was constructively fraudulent and void. *Moore v. Los Lugos Gold Mines*, 172 Wash. 570, 21 P. (2d) 253.

Only two directors, Mr. Campbell, who was also a stockholder, and Mr. Lycette, who was not a stockholder, were present at the office of one of the directors at the time of the execution of the mortgage, easement, and note. Mrs. Campbell, a stockholder, was present. Mrs. Trethewey, who is a director and stockholder of the corporation, and her husband, who is a stockholder, were not afforded an opportunity to object to dissipation of the assets of the corporation by Mr. Lycette and the Campbells.

The stockholders have no direct power to manage the affairs of the corporation. They must function through a board of directors. *Trethewey v. Green River Gorge, Inc., supra.* The mortgage and easement executed in the name of the corporation by its officers without authority

from its board of directors, are void. 13 Am. Jur. 882, § 904; 2 Fletcher, Cyclopedia Corporations (Perm. ed.) 321, § 471.

■ No meeting of the board of directors was called or held. Mrs. Trethewey was one of the directors of the corporation; therefore, she was entitled to notice of meeting of the board. The other two directors, Mr. Campbell and Mr. Lycette, as stated above, acted informally and no record was made of their action, other than the execution of the instruments mentioned. A meeting of the board of directors of a corporation is not legally constituted without notice to all of the directors. 13 Am. Jur. 915, § 956; 64 A. L. R. 715; 2 Fletcher, Cyclopedia Corporations (Perm. ed.) 190, § 406.

The excuse urged by respondents, for failure to give notice to Mrs. Trethewey of the meeting, that the giving of the notice would have been fruitless and would have prevented carrying out of the business that Mr. Lycette and Mr. Campbell intended, is without merit. The fact that a director might dissent from the action of the board cannot be successfully urged in excuse of deprivation of his legal right to know what action is being taken so that he may proceed in a manner which he deems proper respecting it. He is entitled to be present and make himself heard.

If it be conceded for the sake of argument that a meeting could validly be held without notice to Mrs. Trethewey, it should be borne in mind that there was no meeting held of the board of directors. In *Star Mills v. Bailey,* 140 Ky. 194, 130 S. W. 1077, 140 Am. St. 370, the court of appeals of Kentucky held that even if all of the directors met at a casual and informal meeting of which no record was kept that would not constitute a legal meeting of a board of directors:

" Appellee, being a director of the corporation, could not alone bind it in his own behalf, nor could he and one other— there being three directors—constitute a quorum of the board for that transaction. Hence, it was necessary for him to show that Vanarsdall was present and acting. In that he failed. Being a director of the corporation, he might nevertheless have loaned it money, and have taken its binding obligation to repay it. But when he asserts that such was the fact, and exhibits what purports to be the company's note to himself, inasmuch as he was acting in a dual capacity,

representing himself against himself as trustee as it were, the presumption is unfavorable to him, and, upon his act being called in question by the corporation, the burden is imposed on him to show by a preponderance of proof that he acted bona fide, and that the corporation got the benefit of his act to the extent charged. This rule of the law is not to prevent directors of a corporation from dealing with it, but to prevent them from claiming to have done so when they had not, as well as to prevent their overreaching the trust which they had essayed to protect. Being so easy to act in accordance with the law so as to preserve every necessary record to establish the good faith and consideration in the transaction, a failure to keep such record by one whose duty it is to keep it, ought to stand as evidence against him when he attempts to assert a claim against the corporation in the absence of some other convincing evidence."

Mr. Lycette and Mr. Campbell never met as a board of directors and acted as a board to authorize the execution of the mortgage and easement. The great weight of authority is to the effect that notice of a special meeting—in the case at bar there was not a regular nor was there a special meeting of the directors as a board—must be given to each director, unless there is some express provision in the charter or by-laws or established usage to the contrary, or unless it is impossible or impractical to do so. Except in those cases, even a special meeting held in the absence of some of the directors, and without any notice to them, is illegal, and the action at such a meeting, although by a majority of the directors, is invalid unless subsequently ratified (there was no ratification) or unless rights have been acquired by innocent third persons (no innocent third persons in the case at bar) as against whom the corporation must be held estopped, and their full knowledge of the time, place, and fact of such meeting will not do away with this requirement. 2 Fletcher, Cyclopedia Corporations (Perm. ed.) 190, § 406.

■ The only directors present at the meeting when Mr. Lycette was retained by the corporation and when the instruments described above were executed, were personally interested in the transactions.

"The rule is well settled in this state that trustees may

not vote as trustees upon matters coming before the board in which they have a personal interest, and that if a trustee does, the action of the board is voidable and may be set aside at the instance of the corporation or of a non-consenting stockholder." *Tefft v. Schaefer*, 136 Wash. 302, 239 Pac. 837, 239 Pac. 1119.

Where, as in the case at bar, timely protest is made, a dissenting stockholder may set aside the acts of interested officers even if there is nothing fraudulent in the transaction.

"The general rule of agency which prohibits an agent from representing both himself and his principal in a transaction in which their interests are adverse and antagonistic fully applies where a corporate officer or director attempts to represent both himself as an individual and a corporation in a transaction in which his and the corporate interests are adverse and antagonistic; he has no right, as a general rule, to represent the corporation in any transaction in which he is personally and directly or indirectly interested in obtaining any advantage at the expense of the corporation, and he cannot act as or for an adverse party to the transaction.

"Actual injury is not the principle upon which the law proceeds in condemning such contracts. Fidelity in the agent is what is aimed at, and as a means of securing it, the law will not permit the agent to place himself in a situation in which he may be tempted by his own private interest to disregard that of his principal. Although the contractors may, as members of the board, have acted honestly and solely with reference to the corporate interest, yet, if they have acted otherwise, they occupy a position which puts it in their power to conceal the evidence of the facts and to defy detection. If, therefore, such contracts were to be held valid until shown to be fraudulent or corrupt, the result, as a general rule, would be that they must be enforced in spite of fraud or corruption. There also enters into it the legal principle that in order to make an express contract, there must be the assent of two separate independent minds; that no man can effectually make a contract with himself." 13 Am. Jur. § 1002, p. 955.

The decree and judgment are reversed and the causes remanded to the trial court, with direction to set aside the easement and mortgage and to dismiss the action for foreclosure of the mortgage.

SIMPSON, C. J., STEINERT, JEFFERS, and GRADY, JJ., concur.